**EPSTEIN BECKER & GREEN, P.C.**
Kenneth J. Kelly (KK-4195)
Jennifer M. Moak (JM-3173)
Two Gateway Center, 12th Floor
Newark, New Jersey 07102
(973) 642-1900
Attorneys for Defendant
 Integrated Communications, Corp.

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

LINDA HOLPP,

                          Plaintiff,

                - against -                                     03 CV 03383 (WGB) (MCA)

INTEGRATED COMMUNICATIONS,
CORP.,

                          Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x


DEFENDANT'S BRIEF IN OPPOSITION TO PLAINTIFF'S
SECOND MOTION FOR LEAVE TO AMEND THE COMPLAINT


Two Gateway Center, 12th Floor
Newark, New Jersey 07102
(973) 642-1900


NY:373309v1                              Attorneys for Defendant

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................................ ii

PRELIMINARY STATEMENT .................................................................................. 1

STATEMENT OF THE PROCEDURAL HISTORY ................................................. 3

STATEMENT OF THE FACTS ................................................................................. 6

    A.    Plaintiff's Employment with ICC .......................................................... 6

    B.    Aventis's Complaints about Plaintiff and  Demand that ICC
        Remove Her from the Account ............................................................... 7

    C.    Work from Home .................................................................................... 9

    D.    FMLA Leave ......................................................................................... 10

    E.    Termination ........................................................................................... 10

ARGUMENT .............................................................................................................. 11

POINT I     PLAINTIFF'S SECOND MOTION FOR LEAVE TO AMEND
            MUST BE DENIED BECAUSE SHE CANNOT ESTABLISH
            GOOD CAUSE PURSUANT TO F.R.C.P. 16 (b) ............................... 11

    A.    Plaintiff's Claim that ICC Will Not Suffer Prejudice Does Not
        Constitute Good Cause Under F.R.C.P. 16(b) ...................................... 11

    B.    Plaintiff's Alleged Surprise  is Not Good Cause Under F.R.C.P.
        16(b) ...................................................................................................... 14

POINT II    PLAINTIFF'S SECOND MOTION FOR LEAVE TO AMEND
            SHOULD BE DENIED PURSUANT TO F.R.C.P. 15 BECAUSE
            IT IS UNTIMELY, PREJUDICIAL AND UNREASONABLE .......... 15

    A.    The Applicable Standards On a Motion  to Amend Require Denial
        of this Motion ........................................................................................ 15

    B.    Plaintiff's Proposed Amendment Will Unduly Prejudice ICC ............. 16

POINT III   PLAINTIFF'S PROPOSED AMENDMENT  SHOULD BE
            DENIED BECAUSE IT IS FUTILE; IT IS  UNDISPUTED THAT
            ICC TERMINATED PLAINTIFF'S  EMPLOYMENT BECAUSE
            THE SOLE CLIENT FOR WHOM  SHE WORKED

DEMANDED THAT SHE BE REMOVED FROM ITS
BUSINESS................................................................................................. 19

CONCLUSION.............................................................................................. 22

<u>TABLE OF AUTHORITIES</u>

<u>Page</u>

## CASES

*Adams v. Gould, Inc.*, 739 F.2d 858 (3d Cir. 1984) ........................................................... 18

*In re Burlington Coat Factory Sec. Litg.*, 114 F.3d 1410 (3d Cir. 1997) ....................................... 16

*Conoshenti v. Public Serv. Elec. & Gas Co.*, 364 F.3d 135 (3d Cir. 2004) .................................... 5

*Cureton v. National Colegiate Athletic Association*, 252 F.3d 267 (3d Cir. 2001) ................. 17, 19

*Doug Grant, Inc. v. Greate Bay Casino Corp*, 232 F.3d 173 (3d Cir. 2000) ............................... 16

*Eastern Minerals & Chem. Co. v. Mahan*, 225 F.3d 330 (3d Cir. 2000) ..................................... 12

*Foman v. Davis*, 371 U.S. 178 (1962) ..................................................................... 15, 16

*Koplove v. Ford Motor Oil*, 795 F.2d 15 (3d Cir. 1986) ............................................... 12

*Lake v. Arnold*, 232 F.3d 360 (3d Cir. 2000) ........................................................... 15

*Leung v. SHK Mgmt, Inc., No. CIV. A. 98-3337*, 1999 WL. 1240961 (E.D.Pa. Dec. 21, 1999) ................................................................................................................ 20

*Lone Star Steakhouse and Saloon, Inc. v. Liberty Mut. Ins. Group*, No. 02-1185, 2003 WL. 21659663 (D. Kan. Mar. 13, 2003) ................................................................... 13

*Mobile Medex, Inc. v. Bramucci, No. Civ. A. 92-2835*, 1993 WL. 740979 (D.N.J. June 22, 1993), *aff'd*, 27 F.3d 558 (3d Cir. 1994) ........................................................... 12

*Ogborn v. United Food and Commercial Workers Union, Local No. 881*, 305 F.3d 763 (7th Cir. 2002) ................................................................................................ 20

*Phoenix Technologies, Inc. v. TRW, Inc.*, 154 F.R.D. 122 (E.D. Pa. 1994), *aff'd*, 43 F.3d 1462 (3d Cir. 1994) ............................................................................................ 21

*Reynolds v. Borough of Avalon*, 799 F. Supp. 442 (D.N.J. 1992) ................................... 13

*Sabatini v. Reinstein, No. Civ. A. 99-2393*, 2001 WL. 872760 (E.D.Pa. July 10, 2001) ............. 21

*Tschantz v. McCann*, 160 F.R.D. 568 (N.D. Ind. 1995) ............................................... 13

*Warner-Lambert Co. v. Teva Pharmaceuticals USA*, 289 F. Supp. 2d 515 (D.N.J. 2003) ..... 16, 21

## STATUTES

29 U.S.C. § 2617...................................................................................................6, 15

F.R.C.P. 11   .......................................................................................................2

F.R.C.P. 15   ..................................................................................................12, 15

F.R.C.P. 16   ............................................................................................11, 14, 15, 22

## Preliminary Statement

Over six months after receipt of defendant Integrated Communication Corporation's ("ICC's") motion for summary judgment, nearly nine months after the close of discovery, and over thirteen months after the court-ordered deadline for filing amended pleadings - - and after one motion for leave to amend was denied - - plaintiff Linda Holpp has moved for the <u>second</u> time for leave to amend her complaint, this time to add a disability discrimination claim pursuant to the New Jersey Law Against Discrimination ("LAD"). ICC respectfully submits that plaintiff's motion should be denied because: (1) she still does not have good cause for her noncompliance with Judge Madeline Cox Arleo's December 19, 2003 scheduling order; (2) permitting her proposed amendment would cause ICC substantial prejudice, and (3) the existing record refutes her newfound claim.

Plaintiff's untimely, last-minute new motion for leave to amend is nothing but a futile effort to salvage a meritless complaint and to cause ICC significant prejudice and unnecessary expense. Plaintiff's purported basis for filing this second motion to amend is that she was unfairly surprised that ICC argued in its summary judgment brief that the non-economic damages she had sought in her original complaint are unavailable under the FMLA. Plaintiff makes this argument even though the FMLA expressly sets forth what types of damages are recoverable, and ICC's answer asserts as a defense that plaintiff is not entitled to the damages she seeks. Her "unfair surprise" argument does not have any merit, and certainly does not constitute good cause. In fact, this Court has already found that plaintiff's failure to research the applicable law is not good cause for violating a scheduling order.

Similarly, this Court has also found that an amendment at this late stage would cause undue prejudice to ICC. Plaintiff's first motion for leave to amend was denied on grounds

of futility - - she could not state a cause of action for failure to accommodate under the LAD as a matter of law  - - and prejudice.  With the continued passage of time, the prejudice to ICC only increases, and plaintiff's newfound disability discrimination theory will require ICC to engage in additional discovery, including the possible retention of an expert.  The issue of whether plaintiff was disabled under the LAD was never an issue in this action, and ICC did not seek discovery from plaintiff's physicians.  Should the Court permit plaintiff to amend her complaint to add a claim of disability discrimination, the nature and extent of plaintiff's purported disability becomes a central focus in this action and it is critical that ICC obtain, at the very minimum, copies of plaintiff's medical records from her treating physicians, and most likely depositions of her physicians to explain such records.

Aside from the prejudice to ICC in having to reopen discovery over nine months after it has closed, ICC has incurred significant expense in preparing its summary judgment motion.  If permitted to amend her complaint, ICC would have to incur further significant legal costs for its counsel to prepare a second summary judgment motion.  What is more, the factual record establishes that there is not one shred of evidentiary support for plaintiff's claim that ICC terminated her employment because she suffered from a medical condition - - whether her alleged condition constitutes a "serious health condition" or a "disability."  Plaintiff must be mindful of her F.R.C.P. 11 obligation to ensure that the allegations have evidentiary support.  The record establishes, without contradiction, that ICC terminated plaintiff's employment, after providing plaintiff with medical leave, because Aventis Pasteur, Inc. ("Aventis"), the sole client for whom she worked, demanded that ICC remove her from its account.  Plaintiff's most recent motion to amend cannot mask the fact that her action does not have any merit - - whether

couched as an FMLA or LAD claim - - and she has not offered any good cause to permit her untimely motion.

## Statement of the Procedural History

Plaintiff commenced this action against ICC in or about July 2003, seeking damages on three counts: (a) Count One - - Interference with Rights under the FMLA; (b) Count Two - - Failure to Reinstate under the FMLA, and (c) Count Three - - Retaliation under CEPA. (See complaint annexed as Exhibit A to the April 22, 2005 affidavit of Jennifer M. Moak ("Moak Aff.").)  ICC served its answer on September 30, 2003, denying the substantive allegations set forth in the complaint. (Moak Aff., Ex. B.)

On December 19, 2003, Magistrate Judge Madeline Cox Arleo signed a scheduling order that provides that "any motion to amend the pleadings must be filed not later than February 28, 2004." (Moak Aff., Ex. C.)  The scheduling also provides that discovery would close on May 28, 2004. (Moak Aff., Ex. C.)  At plaintiff's counsel's request, with ICC's consent, discovery was extended through June 18, 2004. (Moak Aff., Ex. D.)  ICC deposed plaintiff, and plaintiff deposed ICC employees Paul O'Neill, Steven Viviano and William Young, ICC's former employee, Larry Turner, and Aventis employees, Chad Hoover and Julian Ritchey. (Moak Aff., ¶ 5.)

On June 21, 2004, the parties appeared before Magistrate Judge Arleo for a settlement conference. (Moak Aff., ¶ 6.)  At the conference, ICC informed the Court and plaintiff's counsel of its intention to make a motion for summary judgment dismissing the complaint in its entirety. (Moak Aff., ¶ 6.)  Judge Arleo directed that the parties submit a proposed briefing schedule to Judge William G. Bassler for his approval. (Moak Aff., ¶ 6.)  At the conference, plaintiff's counsel also requested another discovery extension to July 30, 2004,

which Judge Arleo granted.  (Moak Aff., ¶ 6.)  Discovery in this action closed on July 30, 2004.

(Moak Aff., ¶ 6.)

In accordance with Judge Arelo's directive, the parties submitted a proposed consent order containing a briefing schedule for ICC's motion for summary judgment to Judge Bassler.  The briefing schedule provides that ICC was to serve its summary judgment motion by September 23, 2004, plaintiff was to serve her opposition by October 22, 2004, and ICC was to serve its reply by November 5, 2004.  Judge Bassler signed this Order.  (Moak Aff., Ex. E.) Subsequently, plaintiff submitted a letter to the Court indicating that she intended to make a motion for partial summary judgment as to liability on Count One of the complaint (unlawful interference under the FMLA), and suggested the same briefing schedule for her motion, to which ICC consented.  Judge Bassler signed plaintiff's proposed Order. (Moak Aff., Ex. F.)

In accordance with the briefing schedule, both parties served summary judgment motions on September 23, 2004.  ICC moved to dismiss the complaint in its entirety.  Plaintiff moved for partial summary judgment as to liability on her unlawful interference under the FMLA claim.  (Moak Aff., ¶ 9.)  The motions for summary judgment have been pending before Judge Bassler since November 2004, but there has been no decision to date.  (Moak Aff., ¶ 9.)

On or about October 20, 2004, after reviewing ICC's summary judgment brief, and serving her own brief, plaintiff sought permission from the Court to amend her complaint to add a claim for failure to accommodate under the LAD,  (see Moak Aff., ¶ 10, Ex. H), which ICC opposed.  (Moak Aff., ¶ 10, Ex. I.)  The sole basis for her proposed amendment was that damages for physical and emotional distress are not available under the FMLA, but are under the LAD.  Apparently, plaintiff realized that even if she prevailed on her summary judgment motion

and the Court found liability against ICC for unlawful interference under the FMLA, it would be a pyrrhic victory because she did not suffer any recoverable damages.

Judge Arleo granted plaintiff permission to file her motion for leave to amend. On April 5, 2005, following oral argument on the motion, Judge Arleo denied it on the basis of futility and prejudice to ICC.  (See Moak Aff., Ex. J.)  With respect to futility, Judge Arleo found that plaintiff could not state a cause of action as a matter of law because the accommodation she sought - - a leave of absence - - is not a reasonable accommodation under the LAD.  Conoshenti v. Public Serv. Elec. & Gas Co., 364 F.3d 135 (3d Cir. 2004).  With respect to prejudice, the Judge Arleo explained that ICC's need to conduct further discovery, the prejudice to it in having to file a second motion for summary judgment, and plaintiff's absence of good cause for violating the scheduling order warranted denial of the motion to amend.  (Moak Aff., ¶¶ 11 12)  Judge Arleo also indicated that plaintiff's failure to realize that non-economic damages are not available under the FMLA, after receiving ICC's motion for summary judgment, does not constitute good cause for filing an untimely amendment.  (Moak Aff., ¶ 12.)

Plaintiff has now filed a second motion for leave to amend, alleging another theory of discrimination under the LAD - - that ICC terminated her employment because she was disabled and because she took a disability leave.  At oral argument on the first motion for leave to amend, Judge Arleo stated that if plaintiff filed a second motion for leave to amend, it must set forth good cause for disregarding the scheduling order.  (Moak Aff., ¶ 12.)  Despite Jude Arleo's directive, plaintiff's second motion for leave to amend fails to identify any good cause for the delay, other than counsel's evident failure to research the law prior to filing the complaint.

Plaintiff's new proposed Count Four entitled ""Disability Discrimination-LAD" alleges that plaintiff's back condition constitutes a disability under the LAD, and that ICC

terminated her employment because of her disability and/or because she took time off because of her disability (which time off ICC approved).  Notably, plaintiff never claimed that she suffered from a disability under the LAD until she discovered that her FMLA claims could not survive summary judgment.[1]  Because plaintiff never raised the issue of discrimination under the LAD, there has been no discovery on it, including third party discovery from her treating physicians regarding her purported disability since it was never an issue in the action.   Similarly, ICC conducted only very limited discovery on her alleged physical and emotional distress damages since the FMLA does not provide for recovery of such damages, making any such discovery irrelevant.

## Statement of the Facts

### A.   Plaintiff's Employment with ICC

Plaintiff was employed by ICC from May 18, 1998 through December 16, 2002 pursuant to a May 27, 1998 employment agreement.  (Holpp Dep. at 42, 260-61; Young Dep. at 45.)[2]  At the time of her termination, plaintiff was a Senior Vice President, Group Account Supervisor, assigned exclusively to the Aventis account.  She did not work for any other ICC

.

---

[1]Even if plaintiff overlooked the law regarding damages under the FMLA when it commenced this action, it is certainly a reasonable expectation that plaintiff would have conducted the necessary research, at the very least when preparing its summary judgment motion on its FMLA claim, to determine that "non-economic" damages are not available under the FMLA.  The FMLA statute expressly sets forth the categories of available damages, and physical and emotional distress damages is not one of them.  29 U.S.C. § 2617.  Plaintiff's counsel's claim that they did not expect ICC to challenge plaintiff's legally insufficient lack of damages is not reasonable (or credible) and does not justify an untimely motion to amend, as this Court has already found.

[2] Relevant pages of plaintiff's deposition transcript is annexed as Exhibit M to the Moak Aff.; William Young's deposition transcript is annexed as Exhibit R to the Moak Aff.; relevant pages of Paul O'Neill's deposition transcript is annexed as Exhibit P to the Moak Aff.; Chad Hoover's deposition transcript is annexed as Exhibit O to the Moak Aff.; Julian Ritchey's deposition transcript is annexed as Exhibit N to the Moak Aff.; relevant pages of Larry Turner's deposition is annexed as Exhibit S to the Moak Aff.; and Steve Viviano's deposition transcript is annexed as Exhibit Q to the Moak Aff.   In addition, the affidavit of Chad Hoover is annexed as Exhibit K to the Moak Aff. and the affidavit of Julian Ritchey is annexed as Exhibit L to the Moak Aff.

client.  (Holpp Dep. at 48-49; O'Neill Dep. at 9.)   Paul O'Neill, Executive Vice President, Director of Account Services, was plaintiff's supervisor.  (Compl., ¶ 12.)

**B.      Aventis's Complaints about Plaintiff and**
         **Demand that ICC Remove Her from the Account**

On August 30, 2002, Chad Hoover, then Executive Director of Marketing at Aventis (promoted to Vice President of Marketing) (see Hoover Aff., ¶ 1; Hoover Dep. at 8) met with Mr. O'Neill regarding the status of the Aventis account and plaintiff's performance. (Hoover Aff., ¶ 6; Hoover Dep. at 26-39; O'Neill Dep. at 33-35.)  At that meeting, Mr. Hoover told Mr. O'Neill that he was dissatisfied with plaintiff's leadership of the account and expressed significant concerns with plaintiff's ability to run the business.  (Hoover Aff., ¶ 6; Hoover Dep. at 26-39; O'Neill Dep. at 37-43.)  At Mr. Hoover's deposition, his testimony regarding plaintiff's deficient performance and his demand that she be removed from the account was unequivocal:

> I expressed very clearly to Paul [O'Neill] that if Linda [Holpp] was
> to remain on the business that their business with Aventis Pasteur
> was in jeopardy and if you wanted to - - if he or ICC were to leave
> her on that business and things were to continue in the manner they
> had for the last year that I had been there that I would have to seek
> another agency because it could not continue.

(Hoover Dep. at 27.)

At Mr. Hoover's request, Mr. O'Neill, on August 30, 2002, after his meeting with Mr. Hoover, met with Michele Logan, Julian Ritchey and Joseph Collins, who were the Aventis account directors who worked regularly with plaintiff, and reported directly to Mr. Hoover. (O'Neill Dep. at 46-49; Ritchey Aff., ¶ 4; Ritchey Dep. at 43-51; Moak Aff., Ex. V.)  All three persons echoed Mr. Hoover's concerns about plaintiff, and their dissatisfaction with her performance on the Aventis account. (Ritchey Aff., ¶¶ 3-4; Ritchey Dep. at 43-51; O'Neill Dep. at 46-49; Moak Aff. Ex. V.)  Among other issues, plaintiff blamed others for problems rather

than taking responsibility herself, acted unprofessionally by trying to play the Aventis directors off one another, and often tried to position personal friendships and sympathies to obtain professional favors, such as extensions of deadlines.  (Ritchey Aff., ¶ 3; Ritchey Dep. at 34-38, 43-51; O'Neill Dep. at 46-49; Moak Aff., Ex. V.)  At this August 30, 2002 meeting, Mr. Ritchey and his co-workers reiterated the concerns expressed by Mr. Hoover earlier that day, and advised Mr. O'Neill that they felt that they could no longer trust plaintiff.  (Ritchey Aff., ¶¶ 3-4; Ritchey Dep. at 34-38, 43-51; O'Neill Dep. at 46-49; Moak Aff., Ex. V.)

On September 4, 2002, Mr. Hoover met with plaintiff regarding her performance issues and expressed his frustration to her about her mismanagement of the account, as he advised Mr. O'Neill he would do before making any final determination regarding the leadership of the Aventis account.  (Hoover Aff., ¶ 7; Hoover Dep. at  36-37; Holpp Dep. at 87-89, 91-92; Moak Aff., Ex. V.)  Mr. Hoover testified that:

> At that meeting, again, there was no ownership taken whatsoever. There was no ownership taken of any of the problems, any of the issues.  There were clear concerns laid out on her part why the relationship was not going well and when that meeting was over it was very clear in my mind that this was not the person to manage this business.

(Hoover Dep. at 37.)  Plaintiff conceded that Mr. Hoover expressed concerns to her about the management of the account at this September 4, 2002 meeting, and that prior to that meeting, he had complained about projects not being handled efficiently over the course of the year, and had criticized plaintiff for taking on new Aventis business when the existing business was not being efficiently completed.  (Holpp Dep. at 91-92.)

On September 4, 2002, following Mr. Hoover's meeting with plaintiff, he firmly advised Mr. O'Neill that he could not have plaintiff on his business and that if ICC kept her on the account, ICC's business with Aventis, one of ICC's largest clients whose annual retainer fee

in 2002 exceeded $3 million, was at risk.  (Hoover Aff., ¶ 8; Hoover Dep. at 13, 32-33; O'Neill Dep. at 72;  Moak Aff., Ex. V.)  If things did not improve, he would be forced to consider other agencies.  (Hoover Aff., ¶ 8; Hoover Dep. at 27; O'Neill Dep. at 72.)

Mr. O'Neill took Mr. Hoover's complaints to his boss, Steve Viviano, then the General Manager of ICC (currently President of ICC) and William Young, Executive Vice President, Chief Administrative Officer at Lowe Healthcare, ICC's parent company. (Viviano Dep. at 22-23, 25-26; Young Dep. at 4, 6, 18-19, 24.)  Because of Aventis's complaints about plaintiff, and Mr. Hoover's clear statement that if she were to remain on the account, ICC could lose Aventis's business, ICC decided that plaintiff would be removed from the account following a transition period during which time a new account manager would be brought "up-to-speed" on the account.  (O'Neill Dep. at 68-69, 72; Turner Dep. at 59-60.)  On September 19, 2002, Mr. O'Neill informed Aventis that Steven Sobel, another ICC account manager, would replace plaintiff on the account, which management change became effective in October 2002.  (O'Neill Dep. at 73, 129.)  In the short interim, plaintiff continued to function as the account manager while working from home until she went out on medical leave on October 1, 2002. (O'Neill Dep. at 69, 101-102, 103, 104, 130-131.)

## C.     <u>Work from Home</u>

On September 9, 2002, five days after Mr. Hoover's ultimatum to Mr. O'Neill about removing plaintiff from the Aventis account, plaintiff informed her boss, Mr. O'Neill, that she was unable to drive to work due to a back condition.  (O'Neill Dep. at 99.)  Mr. O'Neill asked her if she would like to work from home, to which plaintiff agreed.  (O'Neill Dep. at 98-100.)  Even though she submitted a medical note to ICC's Human Resources department on or about September 13, 2002 which stated that she would be out of work for six weeks, plaintiff

wanted to work, or "help out," as she puts it, from home.    (O'Neill Dep. at 99; Turner Dep. at 19-20, 24, 69.)  From September 9, 2002 to September 30, 2002, ICC permitted her to work from home on a limited basis, earning her full salary.  (O'Neill Dep. at 99-100, 103, 104.)  Plaintiff does not dispute this fact.  She testified:  "I was doing my best to help out from home [was] the truth . . . I was helping on the account.  That's what I was actually doing."  (Holpp Dep. at 225:6-7. 226:9-10.)

**D.      FMLA Leave**

On or about October 1, 2002, plaintiff spoke with Mr. Turner on the telephone and advised him that she could no longer work from home.  (Turner Dep. at 32-33; Holpp Dep. at 228.)  She followed up with an email to Messrs. Turner and O'Neill dated October 2, 2002 wherein she stated that could no longer work from home despite her attempts to do so.  (Holpp Dep. at 227-28; O'Neill Dep. at 69-70, 134; Turner Dep. at 33-34; Moak Aff., Ex. T.)   In response, Mr. Turner forwarded her FMLA paperwork and placed her on FMLA leave, effective October 1, 2002 through January 2, 2003.  (Turner Dep. at 86-87; Moak Aff., Ex. U.)  There is no dispute that ICC granted plaintiff twelve weeks FMLA leave.  (Moak Aff., Ex. U.)

**E.      Termination**

On December 16, 2002, plaintiff returned from FMLA leave.  During the period beginning August 30, 2002, when Aventis had expressed the necessity for her replacement, through plaintiff's FMLA leave, ICC had finalized its plan for a new account manager for the Aventis account.  (O'Neill Dep. at 129-30; Viviano Dep. at 31.)  These plans were put in place prior to plaintiff even raising any issue of any medical condition or need to work from home. (O'Neill Dep. at 70-71.)  ICC did not terminate plaintiff's employment while she was on FMLA leave because it was possible that upon her return, there may have been an appropriate position

for her elsewhere in the company. (O'Neill Dep. at 140-42; Viviano Dep. at 36-37; Young Dep. at 32.) Mr. Young testified that "The decision had been made to allow Linda to return from her leave so that we could really look at every opportunity and see what basically may or may not develop in regard to her as an opportunity for her." (Young Dep. at 45.) When she returned to work on December 16, 2002, there was no position available for plaintiff. Accordingly, ICC terminated plaintiff's employment because of Aventis's dissatisfaction with her management of the account, and its warning that if plaintiff were not removed from the account, ICC stood to lose Aventis's multi-million dollar business. (O'Neill Dep. at 150-151; Viviano Dep. at 29, 33, 36; Young Dep. at 18, 32-33; Turner Dep. at 44; Hoover Dep. at 27; Ritchey Dep. at 34-38, 43-51; Hoover Aff., ¶ 8.)[3]

## ARGUMENT

### POINT I

### PLAINTIFF'S SECOND MOTION FOR LEAVE TO AMEND MUST BE DENIED BECAUSE SHE CANNOT ESTABLISH GOOD CAUSE PURSUANT TO F.R.C.P. 16 (b)

**A.    Plaintiff's Claim that ICC Will Not Suffer Prejudice Does Not Constitute Good Cause Under F.R.C.P. 16(b)**

F.R.C.P. 16(b) provides that "A schedule shall not be modified except upon a showing of good cause and by leave of the district judge or, when authorized by local rule, a magistrate judge." (Emphasis added.) Plaintiff has failed to set forth any good cause for her untimely motion for leave to amend, made more than fourteen months after the deadline for

---

[3] When plaintiff returned from her FMLA leave, the only open position was one that involved managing Diovan, the most significant new product (an angiotensin II receptor blocker ("ARB") (which is a anti-hypertension product) of another major client, Novartis. (O'Neill Dep. at 144; Vivano Dep. at 46-48.) Plaintiff was not considered for the assignment because Novartis's management required that ICC assign only its "A Team," meaning the best people in the agency or the best people ICC could find outside the agency, to the account. Since plaintiff had been asked off the Aventis account by Aventis, ICC did not consider her one of its best employees; she was not part of the "A-Team." (O'Neill Dep. at 149-150; Viviano Dep. at 46-49.)

amendments set forth in Judge Arelo's December 19, 2003 Scheduling Order. (Moak Aff., Ex. C.) See Koplove v. Ford Motor Oil, 795 F.2d 15, 18 (3d Cir. 1986) ("As Rule 16 recognizes, scheduling orders are at the heart of case management. If they can be disregarded without a specific showing of good cause, their utility will be severely impaired") (footnote omitted); Eastern Minerals & Chem. Co. v. Mahan, 225 F.3d 330, 340 (3d Cir. 2000) (affirming the denial of motion to amend to add RICO claims made at date after deadline established in court's pretrial case management order).

In Eastern Minerals & Chemical Co., the Third Circuit explained that when a party seeks leave to amend pursuant to F.R.C.P. 15, and that motion violates a F.R.C.P. 16 scheduling order, the party must first show good cause for its noncompliance with the scheduling order before the court will consider whether to allow the amendment pursuant to F.R.C.P. 15. Id at 340. Accordingly, this Court's first consideration is whether plaintiff has set forth good cause for its delay, which ICC submits she has not. See also Mobile Medex, Inc. v. Bramucci, No. Civ. A. 92-2835, 1993 WL 740979 (D.N.J. June 22, 1993) (good cause does not exist where the facts in the proposed amended complaint were well known to the plaintiff at the time he filed the original complaint), aff'd, 27 F.3d 558 (3d Cir. 1994).

Plaintiff's argument that there exists good cause because there is allegedly no undue prejudice to ICC does not have any merit. First, and as set forth in more detail below, plaintiff's proposed amendment will cause significant prejudice to ICC, including reopening discovery regarding the nature and extent of plaintiff's alleged disability and alleged non-economic damages. Second, ICC has incurred significant time and expense in preparing its summary judgment motion, and will have to incur additional significant legal fees to prepare a second motion for summary judgment addressing a different body of law. Aside from the

prejudice to ICC, the proposed amendment will burden the Court because it will have to decide another motion for summary judgment that could have been encompassed in the first motion had plaintiff timely amended her complaint.

Second, the alleged lack of undue prejudice to ICC, even if true, is not good cause. Plaintiff cites <u>Reynolds v. Borough of Avalon</u>, 799 F. Supp. 442 (D.N.J. 1992) in support of her position that an amendment should be permitted when the proposed new claim substantially overlaps with the existing claims. However, in <u>Reynolds</u>, unlike here, the Court found <u>good cause</u> pursuant to Rule 16 because a key deposition had not been completed until shortly before plaintiff filed its motion for leave to amend. In this case, discovery closed nearly nine months ago, and there is no good cause for the delay.

Even more, plaintiff's claimed lack of prejudice to ICC is not good cause. <u>See, e.g.</u>, <u>Tschantz v. McCann</u>, 160 F.R.D. 568 (N.D. Ind. 1995) (absence of prejudice irrelevant to good cause for failing to file motion before deadline); <u>Lone Star Steakhouse and Saloon, Inc. v. Liberty Mut. Ins. Group</u>, No. 02-1185, 2003 WL 21659663 (D. Kan. Mar. 13, 2003) (lack of prejudice to the non-moving party does not constitute the good cause required under Rule 16(b) to justify filing a motion to amend after the deadlines set forth in a scheduling order).

Here, plaintiff had knowledge of the facts and circumstances in the case for several years, and could have made her motion within the specified time period. The excuse offered for the delay - - lack of prejudice to ICC - - is not only untrue, but also insufficient. Plaintiff has the burden of establishing good cause; an alleged lack of prejudice does not satisfy plaintiff's burden.

**B.    Plaintiff's Alleged Surprise
is Not Good Cause Under F.R.C.P. 16(b)**

As a second ground for good cause, plaintiff alleges that she was unfairly surprised that ICC asserted that emotional and physical distress damages are unavailable under the FMLA. This contention is hard to believe given that the FMLA statute upon which plaintiff sues ICC expressly sets forth the available categories of damages for FMLA interference and retaliation claims, and emotional and physical distress damages are not among them. The statute provides:

> (1) Liability
>
> Any employer who violates section 2615 of this title shall be liable to any eligible employee affected –
>
> (A)    for damages equal to –
>
> (i)    the amount of –
>
> (I)    any wages, salary, employment benefits, or other compensation denied or lost to such employee by reasonable of the violation; or
>
> (II)    in a case to which wages, salary, employment benefits, or other compensation have not been denied or lost to the employee, any actual monetary losses sustained by the employee as a direct result of the violation, such as the cost of providing care, up to a sum of 12 weeks of wages or salary for the employee;
>
> (ii)    the interest on the amount described in clause (i) calculated at the prevailing rate; and
>
> (iii) an additional amount as liquidated damages equal to the sum of the amount described in clause (i) and the interest described in clause (ii), except that it an employer who has violated section 2615 of this title proves to the satisfaction of the court that the act or omission which violated section 2615 of this title was in good faith and that the employer had reasonable grounds for believing that the act or omission was not a violation of section 2615 of this title; such court may, in the discretion of the court,

reduce the amount of the liability to the amount and interest
determined under clauses (i) and (ii), respectively; and

(B)   for such equitable relief as may be
appropriate, including employment, reinstatement and
promotion.

29 U.S.C. § 2617(a)(1).   Plaintiff's counsel's apparent failure to review the statute upon which

she seeks non-economic damages from ICC is not good cause for an untimely motion to amend.

What is more, ICC's answer asserts as its Tenth Defense that plaintiff "is not

entitled to the equitable, compensatory, punitive and other monetary damages sought in the

complaint." (Moak Aff., Ex. B.)   Plaintiff's claimed surprise that ICC's summary judgment

brief argued that the damages she seeks are unavailable is disingenuous at best considering that

ICC asserted plaintiff's lack of entitlement to damages in its answer.   For these reasons,

plaintiff's unfair surprise argument should not be given any weight, let alone constitute good

cause for her untimely motion.


## POINT II

### PLAINTIFF'S SECOND MOTION FOR LEAVE TO AMEND SHOULD BE DENIED PURSUANT TO F.R.C.P. 15 BECAUSE IT IS UNTIMELY, PREJUDICIAL AND UNREASONABLE

**A.      The Applicable Standards On a Motion
to Amend Require Denial of this Motion**

Even if plaintiff could show good cause pursuant to F.R.C.P. 16(b) - - which she

cannot - -   F.R.C.P. 15(a) mandates denial of her motion.   F.R.C.P. 15(a) provides that leave to

amend complaints shall be freely granted when "justice so requires."   Foman v. Davis, 371 U.S.

178, 181 (1962); Lake v. Arnold, 232 F.3d 360, 373 (3d Cir. 2000).   Such leave is inappropriate,

however, and should be denied when there is "undue delay, bad faith or dilatory motive on the

part of the movant, repeated failure to cure deficiencies by amendments previously allowed,

undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." Foman, 371 U.S. at 182. See also Warner-Lambert Co. v. Teva Pharmaceuticals USA, 289 F. Supp. 2d 515 (D.N.J. 2003) (motion to amend should be denied as futile if amended pleading could not survive a motion for summary judgment); Doug Grant, Inc. v. Greate Bay Casino Corp, 232 F.3d 173, 188-89 (3d Cir. 2000) (upholding district court's denial of leave to amend because it found that "it would be futile to amend the complaint to include a meritless claim.") (citation omitted). Where, as here, there has been undue delay causing prejudice to ICC, and the proposed amendment would be futile based on the fully briefed undisputed facts, leave to amend should be denied. In re Burlington Coat Factory Sec. Litg., 114 F.3d 1410, 1434 (3d Cir. 1997).

**B.      Plaintiff's Proposed Amendment
          Will Unduly Prejudice ICC**

         ICC will be prejudiced by plaintiff's proposed amendment because it will require reopening discovery after it has already spent much time, effort and money in preparing its summary judgment motion. ICC should not be burdened with conducting further discovery as to plaintiff's medical condition regarding an entirely separate and distinct legal theory. Further, it is likely that ICC will require an expert to testify as to whether plaintiff's medical condition constitutes a disability under the LAD; until now plaintiff's precise medical condition has never been put in issue because ICC approved her medical leave for a serious health condition, and did not consider the legal/factual issue of whether she suffered from a "disability" under the LAD. At the very minimum, ICC will require discovery of plaintiff's medical records because whether she suffered from a LAD-recognized disability is critical to plaintiff's case. Previous discovery also did not focus on her alleged emotional and physical distress damages because they are not recoverable under the FMLA.

Also, ICC spent significant time and money preparing its summary judgment motion, responding to plaintiff's summary judgment motion, and opposing a meritless motion for leave to amend. Now ICC has been forced to incur even more expense in opposing this motion. To permit plaintiff to amend her complaint would not only require additional discovery, but would necessitate additional motion practice, including potentially a second motion for summary judgment, which would cause great prejudice to ICC.

In an analogous case, <u>Cureton v. National Colegiate Athletic Association</u>, 252 F.3d 267 (3d Cir. 2001), the Third Circuit made clear that at some point, delay becomes "undue, placing an unwarranted burden on the court, or will become prejudicial, placing an unfair burden on the opposing party," and is often undue when, as here, the movant has had previous opportunities to file an amended complaint. In <u>Cureton</u>, the plaintiffs sought to amend their complaint to add a disparate treatment theory of discrimination after having lost summary judgment on their disparate impact discrimination theory. The court cited four reasons, each applicable here, for finding undue prejudice and denying the motion: (1) the motion was filed three years after the complaint was filed; here, plaintiff filed this motion almost two years after filing her complaint; (2) the factual information on which the proposed amendment relied was known almost two and half years before plaintiff sought leave to amend; here, plaintiff has known the factual information upon which her amendment is based since at least December 16, 2002; (3) judicial efficiency would be damaged by trying claims seriatim; here, judicial efficiency would be damaged because discovery would need to be reopened, the parties would need to brief a second motion for summary judgment, and the court would need to consider two separate motions for summary judgment; and (4) the interest in the finality of the proceedings would be compromised by amendment; here, ICC's summary judgment motion may finally

dispose of this action, and an amendment will only delay a final judgment in this action.  Also

applicable to this case, Cureton held that the plaintiffs' asserted reasons for their delay - -

misplaced confidence in the original legal theory - - is not reasonable.  As in Cureton, plaintiff's

misplaced confidence that emotional and physical damages are available under the FMLA is not

a reasonable basis for filing an amendment at this late stage (let alone good cause under Rule

16(b).)

Plaintiff cites Adams v. Gould, Inc. 739 F.2d 858 (3d Cir. 1984) as support for

filing her amendment, but her reliance on Adams is misplaced.  In Adams, the plaintiffs brought

an ERISA breach of fiduciary duty claim against the trustees of a pension plan.  The defendants

moved for summary judgment, and in opposition, the plaintiffs advanced two legal theories.

Because the District Court accepted plaintiffs' first theory, it did not consider their second

theory, and denied summary judgment to the defendants on the basis of plaintiffs' first theory

only.  On appeal, the Third Circuit reversed the district court's denial of summary judgment, but

never considered the second legal theory, even though plaintiffs had raised it from the very

beginning of the action.  After remand, the plaintiffs sought to amend their complaint to formally

advance their second legal theory.

As set forth in Cureton, Adams is irrelevant here.  Cureton explained:

> Unlike [here], the alternative theory that the
> Adams plaintiffs ultimately pursued had been raised
> at earlier points in the litigation  .  .  .  More
> importantly, unlike the instant case, the Adams
> plaintiffs had not crossed-moved for summary
> judgment and thus had not themselves sought a
> merits determination on their claims.  In contrast,
> although the plaintiffs here by their own admission
> had sufficient facts and legal authority to allege an
> intentional discrimination claim at least by
> September of 1998, rather than attempting to add

that claim, they filed for judgment on the merits of
their disparate impact claim.

252 F.3d at 274-75. (Emphasis added.)

Consistent with controlling precedent set forth in <u>Cureton</u>, this Court should deny

plaintiff's motion for the same reasons it denied her first motion for leave to amend - - it would

cause undue prejudice to ICC and undue delay of this action. Plaintiff knew full well for years

the allegations upon which she now seeks to advance this disability discrimination claim, but

chose at her own peril to do nothing about it until after she received ICC's summary judgment

motion <u>and after her failed first motion for leave to amend</u>.

## POINT III

### PLAINTIFF'S PROPOSED AMENDMENT SHOULD BE DENIED BECAUSE IT IS FUTILE; IT IS UNDISPUTED THAT ICC TERMINATED PLAINTIFF'S EMPLOYMENT BECAUSE THE SOLE CLIENT FOR WHOM SHE WORKED DEMANDED THAT SHE BE REMOVED FROM ITS BUSINESS

Plaintiff and her counsel were certainly aware of the alleged factual basis for the

last minute purported disability discrimination claim long before the inception of this action, but

elected not to move to amend the complaint during the time to do so.  In fact, even when granted

permission to make a motion for leave to amend, plaintiff alleged a futile failure to accommodate

disability discrimination claim.  Having once again failed to research the applicable law, plaintiff

now attempts for a third time to come up with a legally cognizable claim, this time couched as a

LAD disability discrimination/retaliation claim.  This second effort to find a legally cognizable

LAD claim fails because the fully developed factual record before Judge Bassler makes clear that

plaintiff's proposed LAD claim does not have any merit and would be futile.

The record is uncontroverted that ICC terminated plaintiff's employment because Aventis, the sole client for whom she worked, demanded that she be removed from its business. There is no dispute that Aventis employees Chad Hoover and Julian Ritchey complained to plaintiff's supervisor, Paul O'Neill, about her performance and demanded that she be removed from the account <u>before plaintiff informed ICC of her alleged medical condition or need to take medical leave</u>. (Hoover Aff., ¶¶ 6-8; Ritchey Aff., ¶ 4; Moak Aff., Ex. V.)   The affidavits submitted by Messrs. Ritchey and Hoover, and Mr. Hoover's deposition testimony are unequivocal - - <u>if plaintiff were not removed from the Aventis business, ICC stood to lose millions of dollars of business annually from Aventis</u>.   It is well-settled law that an employer does not violate the FMLA, or state or federal anti-discrimination statutes, when it takes an adverse action against an employee for performance reasons. <u>Leung v. SHK Mgmt, Inc.</u>, No. CIV. A. 98-3337, 1999 WL 1240961 (E.D.Pa. Dec. 21, 1999) (court granted summary judgment dismissing FMLA retaliation claim; poor performance is a legitimate business reason for terminating an employee, and fact that employee was not apprised of poor performance prior to termination does not prove pretext); <u>Ogborn v. United Food and Commercial Workers Union, Local No. 881</u>, 305 F.3d 763 (7th Cir. 2002) (employer who terminated employee while on FMLA leave for depression did not violate FMLA because employee's termination was based on poor performance).

In order to prove disability discrimination under the LAD, plaintiff must establish that she suffered an adverse employment action <u>because of her alleged disability</u>.   In this case, the fully developed factual record establishes, without dispute, that ICC terminated plaintiff's employment because of Aventis's request that she be removed from the business, and plaintiff's

continued pursuant of a LAD theory disability discrimination, without any factual support, should not be permitted.

Where the factual record has been fully developed through summary judgment motions, it is appropriate for a court to consider the facts pertinent to the case in determining whether a proposed amendment would be futile. In <u>Warner-Lambert Co.</u>, 289 F. Supp. 2d 515, the court explained:

> An amendment is futile 'if the amended pleading could not survive summary judgment.' The full panoply of facts pertinent to this case has been developed in support of and in opposition to the motions for summary judgment disposed of above.  . . . Were [defendant] permitted to file an amended answer  . . .  [plaintiff], in light of the extensive record in this case, would be entitled to summary judgment in its favor on the defense. This is an unusual Rule 15(a) motion in that it was filed several years after the date the scheduling order fixed as the deadline for amendment of the pleadings . . . . Discovery has been completed and the facts fully developed.  In these circumstances a ruling of the question of futility is facilitated.

<u>Id</u>. at 544-45 (citations omitted).   <u>See also</u> <u>Phoenix Technologies, Inc. v. TRW, Inc.</u>, 154 F.R.D. 122 (E.D. Pa. 1994) (even if the unexplained delay does not rise to the level of undue delay, allowing the amendment would be futile because the claim would not survive a motion for summary judgment), <u>aff'd</u>, 43 F.3d 1462 (3d Cir. 1994); <u>Sabatini v. Reinstein</u>, No. Civ. A. 99-2393, 2001 WL 872760 (E.D.Pa. July 10, 2001) (internal citations and quotations omitted) ("while as a general rule, futility means that the complaint, as amended, would fail to state a claim upon which relief could be granted, it is also clear that an amendment is a futile gesture if the amended pleading could not survive a motion for summary judgment").  Because plaintiff's proposed amendment could not survive summary judgment - - ICC terminated her employment

because her sole client wanted her off its business and not because of any purported serious health condition or disability - - this Court should deny her amendment.

### <u>Conclusion</u>

Plaintiff's proposed amendment comes over thirteen months after the deadline set forth in the scheduling order, over nine months after the completion of discovery, over six months after both parties served summary judgment motions, and after one failed motion for leave to amend.  As set forth above, ICC respectfully requests that the Court deny her motion because: (1) she still does not have good cause for the delay as required by F.R.C.P. 16; (2) an amendment would unduly prejudice ICC, including reopening discovery and causing ICC to have to prepare a second summary judgment motion; and (c) her proposed amendment would be futile.

New York, New York
April 25, 2005

Epstein Becker & Green, P.C.
Attorneys for Defendant

By: _____
    Jennifer M. Moak
    For the Firm